```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

Sanjeev Lath

    v.                                            Civil No. 16-cv-534-LM
                                                    Opinion No. 2018 DNH 080

BMS Cat and Amica
Mutual Insurance Company

## **O R D E R**

This case now consists of nine claims against two defendants, including four claims against BMS Cat ("BMS"), a company with which Sanjeev Lath contracted in the aftermath of a fire at his unit in the Oak Brook Condominium. Before the court is Lath's motion for summary judgment on Causes 20 and 21 of his First Amended Complaint ("FAC").[1] BMS objects on both procedural and substantive grounds. For the reasons that follow, Lath's motion for summary judgment is denied.

### **I. Discussion**

The arguments the parties make for and against summary judgment in favor of Lath on Causes 20 and 21 are virtually identical to those they made with respect to Cause 22. For the same reasons the court gave in its order denying Lath's motion

---

[1] Cause 20 is a claim for breach of the implied covenant of good faith and fair dealing. Cause 21 asserts claims for breach of contract and misrepresentation.

for summary judgment on Cause 22, see doc. no. 301, Lath's motion for summary judgment on Causes 20 and 21 is also denied, and his motion to strike BMS's surreply is denied as moot. That said, there are several aspects of this case that merit attention at this juncture.

A. Cause 20

Cause 20 bears the following heading: "Breach of Implied Covenant of Good Faith and Fair Dealing – Inventory List not prepared and maintained and Items disposed." Doc. no. 24 at 77. According to Lath:

> [T]here was an implied covenant of good faith and fair dealing, that Lath's belongings [would] only be "packed" and transported to an offsite location to be cleaned and washed. The implied covenant was to refrain [sic] BMS Catastrophe Inc., from disposing of any of Lath's belongings.
>
> . . . .
>
> Lath alleges that there was a second implied covenant in the Contents Advanced Work Authorization that an accurate list of inventory would be maintained by BMS Catastrophe Inc. . . . and such a list would be provided to Lath towards [the] end of the day [on which BMS packed up his belongings].

Doc. no. 24 at ¶¶ 284 & 286. It is not at all clear that Lath has stated a claim upon which relief can be granted for breach of the implied covenant of good faith and fair dealing.

In New Hampshire, "[i]n every agreement, there is an implied covenant that the parties will act in good faith and

2

fairly with one another." Birch Broad., Inc. v. Capitol Broad. Corp., 161 N.H. 192, 198 (2010) (citing Livingston v. 18 Mile Point Drive, Ltd., 158 N.H. 619, 624 (2009)). As the Birch Broadcasting court further explained:

> In New Hampshire, there is not merely one rule of implied good-faith duty, but a series of doctrines, each of which serves a different function. [Livingston, 158 N.H. at 624]. The various implied good-faith obligations fall into three general categories: (1) contract formation; (2) termination of at-will employment agreements; and (3) limitation of discretion in contractual performance. Id.

161 N.H. at 198. As for the third category, which is applicable here, the rule is that

> under an agreement that appears by word or silence to invest one party with a degree of discretion in performance sufficient to deprive another party of a substantial proportion of the agreement's value, the parties' intent to be bound by an enforceable contract raises an implied obligation of good faith to observe reasonable limits in exercising that discretion, consistent with the parties' purpose or purposes in contracting.

Centronics Corp. v. Genicom Corp., 132 N.H. 133, 143 (1989). Furthermore:

> A claim for relief from a violation of the implied covenant of good faith contractual performance . . . potentially raises four questions:
>
>> 1. Does the agreement ostensibly allow to or confer upon the defendant a degree of discretion in performance tantamount to a power to deprive the plaintiff of a substantial proportion of the agreement's value? . . .

3

>    2. If the ostensible discretion is of that
>    requisite scope, does competent evidence indicate
>    that the parties intended by their agreement to
>    make a legally enforceable contract? . . .
>
>    3. Assuming an intent to be bound, has the
>    defendant's exercise of discretion exceeded the
>    limits of reasonableness? . . .
>
>    4. Is the cause of the damage complained of the
>    defendant's abuse of discretion, or does it
>    result from events beyond the control of either
>    party, against which the defendant has no
>    obligation to protect the plaintiff? . . .

Id. at 143-44.

There are several problems with the claim that Lath asserts in Cause 20. First of all, he does not appear to identify any agreement that allowed BMS a degree of discretion in its performance that, if exercised in bad faith, would have deprived him of a substantial portion of the contract's value. As for what such a contractual provision might look like,

>    New Hampshire's seminal case on the implied
>    obligation of good faith performance, Griswold v. Heat
>    Incorporated, 108 N.H. 119 [(1967)], held that a
>    contract to pay $200 a month for such personal
>    services as the plaintiff, in his sole discretion, may
>    render required the plaintiff to provide a level of
>    services consistent with good faith, id. at 124.

Centronics, 132 N.H. at 141 (internal quotation marks, brackets, and parallel citations omitted). Lath makes no allegations that he entered into any contract with BMS that afforded BMS the

4

degree of discretion that was enjoyed by the defendant in Griswold.

There is another problem with Cause 20. Lath appears to claim that the implied covenant of good faith and fair dealing imposed upon BMS two duties that were not set out in any of his three agreements with BMS: (1) a duty to refrain from disposing of any of his possessions, see doc. no. 24 at ¶ 284; and (2) a duty to make a list of his possessions, see id. at ¶ 286.[2] However, in Olbres v. Hampton Cooperative Bank, after the trial court used the implied covenant to read a provision into the parties' agreement that they had not included, the New Hampshire Supreme Court reversed, explaining that the trial court's expansive construction of the contract was

> inconsistent with the principles that "[p]arties generally are bound by the terms of an agreement freely and openly entered into, and courts cannot make better agreements than the parties themselves have entered into or rewrite contracts merely because they might operate harshly or inequitably."

142 N.H. 227, 233 (1997) (quoting Mills v. Nashua Fed. Sav. & Loan Ass'n, 121 N.H. 722, 726 (1981)); see also Sovereign Bank, N.A. v. Bosse, No. 2014-0398, 2014 WL 11485848, at *1 (N.H. Dec. 5, 2014) ("Courts have generally concluded . . . that the

---

[2] Lath does not explain how BMS's alleged failure to make a proper list of his belongings deprived him of a substantial portion of the value of any agreement he had with BMS.

covenant of good faith and fair dealing in a loan agreement cannot be used to require the lender to modify or restructure the loan.") (quoting Moore v. Mortg. Elec. Reg. Sys., 848 F. Supp. 2d 107, 130 (D.N.H. 2012)); Carter v. N. Cent. Life Ins. Co., No. 05-cv-399-JD, 2006 WL 2381004, at *3 (D.N.H. Aug. 17, 2006) ("North Central contends that the court should read a notice requirement into its policies as part of the insureds' implied obligation of good faith and fair dealing. That request would stretch contract interpretation far beyond its permissible scope in this case.").

Based upon the foregoing, there appear to be two significant problems with the claim that Lath asserts in Cause 20. Accordingly, Lath is hereby ordered to show cause why Cause 20 should not be dismissed on grounds that: (1) he has not alleged the existence of a contract that would support a claim for breach of the implied covenant of good faith and fair dealing; and (2) his claim impermissibly uses the implied covenant to add terms to the contract(s) at issue that the parties did not include themselves.

B. Cause 23

Cause 23 bears the following heading: "Deliberate Indifference and Deprivation of Ba[s]ic Necessities such as medications." Doc. no. 24 at 86. The conduct underlying Cause

23 is BMS's alleged insistence that Lath pay a bill for its services before it returned various items of personal property to him, including medication. But, however objectionable that conduct may have been to Lath, the statement of Cause 23 in Lath's FAC identifies no legal principle that required BMS to provide him with basic necessities, including his medication. Accordingly, before he may proceed on Cause 23, Lath must show cause why that cause of action should not be dismissed for failure to state a claim upon which relief can be granted. In responding to the court's show cause order, Lath must identify a legal basis for his claim, i.e., a rule enforceable by the court under which BMS's alleged conduct was unlawful, not merely objectionable.

### C. Motions to Strike

In response to BMS's objection to his motion for summary judgment, Lath moves the court to strike: (1) three paragraphs from the affidavit of Robert Smith; (2) the entirety of the affidavit of Richard Nelson; and (3) the entirety of the affidavit of Gustavo Jimenez. Given the court's denial of Lath's motion for summary judgment, those three motions are denied as moot.

Even so, the court turns briefly to the arguments Lath makes in those motions. The court has already discussed Lath's

objections to the Smith and Jimenez affidavits in its order denying Lath's motion for summary judgment on Cause 22, and because BMS submitted those same affidavits in support of its objection to Lath's motion for summary judgment on Causes 20 and 21, it is unnecessary to say anything further about the Smith and Jimenez affidavits. However, for the benefit of the parties, the court offers the following observations on Lath's challenge to the Nelson affidavit.

In support of its objection to Lath's motion for summary judgment, BMS produced the affidavit of Richard Nelson, who identified himself as BMS's counsel. See doc. no. 250-12 at ¶ 1. This is the entire substantive content of Atty. Nelson's affidavit:

> On January 23, 2018, I notified Plaintiff Sanjeev Lath ("Lath") via email that he could pick up his personal property that BMS is holding in storage. Lath has refused to accept the return of his personal property. See January 23, 2018 emails between Sanjeev Lath and Richard Nelson, a true and accurate copy of which is attached hereto as Exhibit 1.

Id. at ¶ 3. To his affidavit, Atty. Nelson attached an e-mail he sent Lath and Lath's response, both dated January 23, 2018.

In his motion to strike, Lath discusses a string of e-mails between himself and Atty. Nelson dating back to December of 2017, presumably to provide context for the January 2018 exchange by explaining that in January of 2018, he was

8

attempting to make an appointment to inventory and photograph the property that BMS was holding, as a part of his pre-trial discovery. Then, he argues that: (1) the Nelson affidavit violates Rule 56(e) of the Federal Rules of Civil Procedure because in it, Atty. Nelson "failed to properly address, Lath's assertion of the scope of the [proposed] January 26, 2018 meeting," doc. no. 254 at 6; and (2) because it was authored by BMS's counsel, the Nelson affidavit suffers from the same infirmities as the affidavit that was criticized by the court of appeals in Friedel v. City of Madison, 832 F.2d 965 (7th Cir. 1987). Neither argument is persuasive.

Lath's argument that Atty. Nelson violated Rule 56(e) by failing to explain, in his affidavit, that his e-mail exchange with Lath took place in the context of Lath's attempt to conduct pre-trial discovery appears to conflate the content of a party's summary judgment briefing and the content of an affidavit, and only the former is addressed by Rule 56(e). That rule sets out the consequences that may result from a party's failure "to properly support an assertion of fact or . . . to properly address another party's assertion of fact as required by Rule 56(c)." Fed. R. Civ. P. 56(e). While Rule 56(e) imposes consequences for failing to properly support or address a fact, in a brief arguing for against summary judgment, that rule does

9

not impose requirements on the contents of an affidavit supporting a brief,³ and surely does not specify the matters an affiant must address in an affidavit. Thus, it is logically impossible for an affidavit to violate Rule 56(e), and nothing in that rule provides a basis for striking an affidavit on grounds of insufficient content. In other words, the argument that Lath makes may be a basis for rejecting an argument in BMS's objection to his motion for summary judgment, but it provides no grounds for striking the Nelson affidavit.

Turning to Lath's second argument, his reliance upon Friedel is unavailing. In Friedel, the court of appeals affirmed the trial court's grant of summary judgment to the defendants in an employment discrimination case. See 832 F.2d at 966. On the way to reaching that decision, the court criticized the plaintiffs' reliance, at summary judgment, on a single affidavit submitted by their counsel. The court described that affidavit this way:

> The only affidavit provided was that of plaintiffs' counsel. To this affidavit the plaintiffs

---

³ The content of a summary judgment affidavit is governed by Rule 56(c)(4), which provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." But even Rule 56(c)(4) does not say anything about the range of issues that an affiant must address in his or her affidavit.

10

> attached a number of interviews of police recruits
> performed by a police official and not taken under
> oath.  Plaintiffs also attached other documents that
> included materials not supported by sworn statements
> on the basis of personal knowledge, and in some cases
> would not be admissible in court.

Id. at 969-70.  In Friedel, the plaintiffs' counsel attempted to introduce into the summary judgment record, as attachments to his own affidavit, evidence related to events about which he had no personal knowledge.  Here, by contrast, Atty. Nelson attached to his affidavit only evidence related to an event about which he did have personal knowledge, i.e., his e-mail exchange with Lath.  In short, Friedel is entirely inapplicable to the facts of this case, and provides no basis for striking the Nelson affidavit.

While Lath may have legal arguments to make arising out of BMS's use of statements of fact drawn from the Nelson affidavit and supported by the exhibit attached to it, he does not appear to have advanced any proper grounds for striking the Nelson affidavit.

## II. Conclusion

For the reasons described above, Lath's motion for summary judgment, document no. 221, is denied, and his motion to strike BMS's surreply, document no. 265, is denied as moot.  Also denied as moot are the following: (1) Lath's motion to strike

11

paragraphs 10, 12, and 14 of the Smith affidavit, document no. 253; (2) Lath's motion to strike the Nelson affidavit, document no. 254; and (3) Lath's motion to strike the Jimenez affidavit, document no. 256. Finally, Lath shall have 20 days from the date of this order to show cause why Causes 20 and 23 should not be dismissed for failure to state a claim upon which relief can be granted.

    SO ORDERED.

_____
Landya McCafferty
United States District Judge

April 17, 2018

cc: Counsel and pro se parties of record