Sanjeev Lath

   v.                               Civil No. 16-cv-534-LM
                                       Opinion No. 2020 DNH 015

Manchester Police Department et al.

## O R D E R

Sanjeev Lath, proceeding pro se, brought claims in this case against 17 defendants in 27 counts. He asserted claims arising out of several alleged incidents that took place during his tenure as a unit owner in the Oak Brook Condominium ("Oak Brook"). Relevant to this order, Lath asserted five counts against Amica Mutual Insurance Co. ("Amica") arising out of Amica's denial of insurance coverage for a fire that occurred in Lath's condominium unit. Amica moves for summary judgment on all of Lath's claims. Lath objects.[1]

## STANDARD OF REVIEW

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ.

---

[1] Lath also moves to strike an exhibit attached to Amica's motion for summary judgment (doc. no. 396) and asks the court to hold a hearing to clarify an issue in the case (doc. no. 404). The court addresses both these motions below.

P. 56(a). In reviewing the record, the court construes all facts and reasonable inferences in the light most favorable to the nonmovant. Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 (1st Cir. 2013).


BACKGROUND

On December 15, 2016, there was a fire in Lath's condominium unit in Oak Brook, which damaged the unit as well as Lath's personal property. The following day, Lath provided notice of the fire and resulting damage to Amica, with whom he had a homeowner's insurance policy (the "Policy").

Amica assigned Lath's claim to one of its adjusters. On December 30, 2016, after the adjuster had begun his investigation of the circumstances of the fire as well as the nature and extent of Lath's claimed damages, Amica's counsel, Michael Snyder, sent Lath a letter by email and regular mail. The letter gave Lath notice of Amica's election to take his examination under oath, as allowed under the Policy. The examination was scheduled for January 18, 2017 at the law offices of Craig and Gatzoulis.

On December 30, 2016, the day Amica's counsel emailed the letter to Lath, Lath responded by email. Lath stated: "I will not be appearing for an examination under oath." Doc. no. 392-5 at 2. Lath further stated that the "policy only requires a

written affidavit which was provided to Amica" and reiterated: "Again, I do not consent and will not consent to such an examination under oath." Id.

On January 3, 2017, Attorney Snyder sent Lath a follow-up letter. The letter referred Lath to the specific provision of the Policy which required Lath to provide Amica with records and documents it requests and submit to an examination under oath. The letter further referenced Lath's apparent concerns that Attorney Snyder is "affiliated" with Michael Craig, at whose law office Lath's examination was to be taken. Although Attorney Snyder denied any affiliation with Attorney Craig, he moved the location of Lath's examination to the Courtyard by Marriot in Manchester, New Hampshire.

Lath received the January 3 letter but did not appear for his examination on January 18 as scheduled. Amica denied Lath's claim due to his failure to appear for an examination under oath.

**DISCUSSION**

Lath asserts five claims against Amica: (1) Civil Conspiracy, in which Lath alleges that Amica conspired with Oak Brook and various tenants to harass him and damage his property (Cause 19); (2) Breach of contract (Cause 24); (3) Breach of the implied covenant of good faith and fair dealing (Count 25); (4)

deception (Count 26); and (5) invasion of privacy (Count 27).

Amica moves to dismiss all of Lath's claims against it, arguing

that Lath's failure to comply with his duties under the Policy

precludes him from bringing any of his claims.  Amica also

contends that even if Lath could proceed with his claims, his

discovery violations prevent him from seeking certain categories

of damages.


I.   <u>Liability</u>

     Section I (entitled "Duties After Loss"), paragraph C(7) of

the Policy provides:

> In case of a loss to covered property, we have no duty
> to provide coverage under this policy if the failure
> to comply with the following duties is prejudicial to
> us. These duties must be performed either by you, an
> insured seeking coverage, or a representative of
> either:
>
> As often as we reasonably require:
>
> a.   Show the damaged property;
> b.   Provide us with records and documents we request
> and permit us to make copies; and
> c.   Submit to examination under oath, while not in
> the presence of an other insured, and sign the same.

Doc. no. 392-1 at 22.  Paragraph H of Section I (entitled "Suits

Against Us") states: "No action can be brought against us unless

there has been full compliance with all of the terms under

Section I of this policy and the action is started within two

years after the date of loss."  <u>Id.</u> at 23.

The New Hampshire Supreme Court addressed a nearly
identical set of provisions in an insurance contract.  The
supreme court noted that the

> purpose of an EUO[2] provision is to enable the carrier
> to possess itself of all knowledge, and all
> information as to other sources and means of
> knowledge, in regard to the facts, material to their
> rights, to enable them to decide upon their
> obligations, and to protect them against false claims.
> The EUO provides a mechanism for the insurer to
> corroborate the claim by obtaining information that is
> primarily or exclusively within the possession of the
> insured.

Krigsman v. Progressive N. Ins. Co., 151 N.H. 643, 648 (2005)

(internal quotation marks and citations omitted).

> The supreme court held:

> The policy unambiguously states that the insured must
> allow Progressive to take an examination under oath
> and that Progressive may not be sued unless there is
> full compliance with all of the policy terms,
> including the EUO provision. A reasonable person in
> the petitioner's position would interpret the policy
> as requiring compliance with the EUO request prior to
> filing suit. Thus, we conclude that the language of
> the petitioner's policy makes submission to a
> reasonable request for an EUO a condition precedent to
> filing suit.

Id. (internal citation omitted).  The court further held that
the insurer did not need to show prejudice from the insured's
refusal to submit to an examination under oath.   Id.

There is no dispute that Lath failed to attend the
examination under oath scheduled for January 18.  Nevertheless,

---

[2] EUO stands for "examination under oath."

Lath argues that Amica is not entitled to summary judgment for several reasons, including that the court should not consider any of Amica's exhibits, that he did submit to a separate examination under oath, and that he asked Amica to reschedule his examination under oath but Amica refused.

A.   Exhibits

Lath's primary argument is that the court should not consider any of the exhibits included with Amica's motion for summary judgment because of various alleged evidentiary failings.[3]  Although Lath's challenges to the exhibits are meritless, the court notes that Lath does not dispute the crux of Amica's argument: the Policy required Lath to submit to an examination under oath before bringing suit and he did not attend the scheduled January 18 examination.  The court will therefore focus only on resolving the crux of the dispute.  As such, the court need not address further Lath's challenges to Amica's exhibits.

---

[3] Lath also moves to strike one of the exhibits, document no. 392-3, which provides his answers to Amica's first set of interrogatories.  Lath asserts that this document contains his social security number and date of birth and should have been redacted.  As Amica notes and Lath does not dispute, this information is already included in the record in documents Lath attached to his amended complaint.  Therefore, Lath's motion to strike is denied.

B.   Other Examination Under Oath

Although Lath admits he did not attend the January 18 examination, he asserts that he did submit to an examination under oath.  Lath states that shortly after the fire, he met with Amica's cause and origin investigator, Sebastian Bongiorno, a meeting that was in the presence of Paul King, Manchester's Fire Marshal.  According to Lath, this was an "examination" that satisfies his obligation under the Policy.

Lath's argument is misplaced.  Even if the initial meeting with Bongiorno could be classified as an "examination" under the policy, Lath does not claim that the examination was under oath.


C.   Lath's Request to Reschedule the Examination

Lath states in an affidavit attached to his objection that on "January 12, 2019, I requested Attorney Michael Snyder to reschedule the examination as I was sick, and my request for time off from work, to attend the examination was denied.  I never received any confirmation or follow up on my request to reschedule this examination."  Doc. no. 397-1 at 1.  In other words, Lath claims that Amica denied his insurance claim based on his failure to attend an examination under oath but refused to reschedule the examination when Lath could not attend.

As noted, "submission to a reasonable request for an EUO [is] a condition precedent to filing suit."  Krigsman, 151 N.H.

at 648. "Reasonableness is a fairly low threshold in this context." Lessard v. EMC Ins. Companies, No. 10-CV-302-JL, 2011 WL 3652507, at *4 (D.N.H. Aug. 17, 2011). If Amica refused to accommodate Lath's one request to reschedule his examination, however, a rational factfinder viewing the record in the light most favorable to Lath could conclude that Amica's request for an examination under oath was unreasonable. See id. (denying insurer's motion for summary judgment based on plaintiff's failure to submit to an examination under oath because whether insurer's lengthy delay in requesting the examination was "reasonable" was a jury question).

The only evidence of Amica's purported failure to accommodate Lath's request to reschedule his examination is a statement in Lath's unsworn statement, titled "Affidavit of Sanjeev Lath." See doc. no. 397. The unsworn "affidavit," however, does not comply with 28 U.S.C. § 1746 and is not competent evidence to defeat summary judgment.[4] See, e.g., Bayad v. Chambers, No. CIV A 04-10468-PBS, 2005 WL 6431855, at *2 n.9 (D. Mass. Dec. 20, 2005).

In light of Lath's pro se status, however, the court holds its ruling on Amica's summary judgment motion as to liability in abeyance. Within two weeks of the date of this order, Lath may

---

[4] For example, Lath's declaration is not signed under penalty of perjury.

submit either a sworn statement or an unsworn declaration under penalty of perjury in compliance with 28 U.S.C. § 1746, supporting his statement that he asked Amica, through Snyder, to reschedule his examination under oath and Amica declined to do so.  If Lath does not submit such a filing **on or before February 13, 2020,** the court will rule on Amica's motion based on the current record.

II.  <u>Damages</u>

Amica argues that it is entitled to summary judgment because Lath has refused to comply with court orders relating to the production of signed authorizations allowing Amica to explore his claim for damages.  Specifically, Amica states that Magistrate Judge Johnstone has issued multiple discovery orders requiring Lath to produce signed authorizations for Amica to access his medical and/or employment records.  Although Lath purportedly executed an authorization in early 2019, he subsequently revoked that authorization.  Amica argues that Lath's behavior entitles it to summary judgment to the extent Lath seeks consequential damages in the form of personal injuries, medical expenses, or lost wages.

In his objection, Lath disputes Amica's contention, stating that he has completed all authorizations for the release of his medical and/or employment records.  In response, Amica submits a

November 24, 2019, email from Lath to Amica's counsel with the subject "withdraw all my releases."  Doc. no. 401 at 5.  In the body of the email, Lath writes "I am withdrawing all my releases . . . ."  Id.

In response, Lath claims that he provided one set of releases to both Amica and co-defendant BMS Cat Inc., as agreed by the parties during a February 19, 2019 case management conference.  Lath claims that BMS Cat Inc. has received all pertinent documents, and that after production was complete, he withdrew the releases.

The court will revisit the issue of Lath's authorizations at the final pretrial conference.  To the extent Lath failed to comply entirely with the Magistrate Judge's discovery orders, Lath will be precluded from seeking consequential damages at trial.[5]

**CONCLUSION**

For the foregoing reasons, plaintiff's motion to strike (doc. no. 396) and motion for a hearing (doc. no. 404) are denied.  Amica's motion for summary judgment (doc. no. 391) is

---

[5] Lath separately moves for the court to schedule a hearing to clarify if Amica has received his medical records.  Doc. no. 404.  The court denies that motion.  The parties may confer to resolve their dispute concerning Lath's records or the court will address the issue at the final pretrial conference.

denied without prejudice to the extent it seeks to preclude Lath from seeking certain categories of damages.  The court holds its ruling on Amica's motion for summary judgment as to liability in abeyance as provided in this order.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

January 30, 2020

cc:  Pro se Party and Counsel of Record